## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STEPHEN POWELL,** <br>           **Plaintiff**, <br><br> **v.** <br><br> **HARVARD UNIVERSITY, _et al.,_** <br>           **Defendants**. | Case No. 1:17-cv-01229-ESH |

### ANSWER

Pursuant to Fed. R. Civ. P. 8, Defendants Harvard University (a/k/a President and Fellows of Harvard College), Harvard University John F. Kennedy School of Government, and Charles Haight (collectively "Defendants"), file this Answer to Plaintiff Stephen Powell's Complaint.  To the extent that any allegation in the Complaint is not specifically admitted, the allegation is denied.  Defendants answer the corresponding numbered paragraphs of the Complaint as follows:

### NATURE OF THE ACTION

1.      Plaintiff Stephen Powell ("Mr. Powell") brings this action against Defendants Harvard University (a/k/a President and Fellows of Harvard College), Harvard University John F. Kennedy School of Government ("HKS'), and Charles Haight (collectively, "Defendants"), in response to Defendants' false and defamatory statements about him that damaged his reputation, and Defendants' intentional invasion of Mr. Powell's privacy by improperly disclosing and disseminating information purportedly related to his financial status.  In addition, because Defendants have recently and for the first time taken the position that Mr. Powell is not a graduate of HKS—more than two decades after he successfully completed all requirements at HKS for his Master in Public Administration ("MPA") degree, and despite repeated affirmations

over two decades that he is an HKS graduate—Mr. Powell also asserts claims for promissory estoppel and equitable estoppel to prevent Defendants from denying his status as an HKS graduate who received his MPA degree from HKS.

**ANSWER**:  Because the allegations in Paragraph 1 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 1 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

### PARTIES AND RELEVANT NON-PARTIES

2.      Plaintiff Stephen Powell is a successful and accomplished businessman and investment banker and a graduate of HKS.  Mr. Powell is the founder and managing director of SinoPowell Capital LLC, a company focused on international transactions in mining, energy, real estate, aviation, finance, and logistics.  Prior to founding SinoPowell Capital LLC, Mr. Powell founded HBO Sports and became the first Programming Chief at ESPN.  Mr. Powell holds a Bachelor of Arts degree in Economics from Brown University, a Master of Business Administration ("MBA") from Harvard Business School, and a Master of Public Administration ("MPA") from HKS, which he received in June 1994.  Since graduating from HKS, Mr. Powell has been extensively involved in the HKS alumni community He was elected twice as a Representative of the HKS DC Alumni Council and was elected President of the HKS DC Alumni Council in 2015.  Mr. Powell served in that capacity until he was forced from this office following and as a direct result of Defendants' false and defamatory statements about him, as explained herein.

**ANSWER**:  Defendants admit Powell holds "a Master of Business Administration ("MBA") from Harvard Business School; deny that Powell holds "a Master Public Administration ("MPA") from HKS; admit that Powell "was elected twice as a Representative of

the HKS DC Alumni Council and was elected President of the HKS DC Alumni Council"; and are otherwise without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint.

3.      Defendant Harvard University, also known as the President and Fellows of Harvard College ("Harvard University"), is a private educational institution based in Cambridge, Massachusetts.  It was established in 1636 and is the oldest institution of higher education in the United States.  Defendant Harvard University published false and defamatory statements about Mr. Powell, invaded Mr. Powell's privacy by disclosing and disseminating confidential financial information about Mr. Powell, and has improperly denied Mr. Powell's status as an HKS graduate, as explained herein.

**ANSWER**:  Defendants admit "Defendant Harvard University, also known as the President and Fellows of Harvard College ("Harvard University"), is a private educational institution based in Cambridge, Massachusetts," and that Harvard University "was established in 1636 and is the oldest institution of higher education in the United States."  Because the remaining allegations in Paragraph 3 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 3 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

4.      Defendant Harvard University John F. Kennedy School of Government ("Harvard Kennedy School" or "HKS") is a school of Harvard University in Cambridge, Massachusetts. HKS is a public policy and public administration school and offers master's degrees in public policy, public administration, and international development, as well as several doctoral degree and various executive education programs.  Mr. Powell attended HKS from June 1993 to June 1994, and during that time completed all requirements for an MPA degree.  In June 1994, Mr.

Powell received his MPA degree from HKS.  Defendant HKS published false and defamatory statements about Mr. Powell, invaded Mr. Powell's privacy by disclosing and disseminating confidential financial information about Mr. Powell, and has improperly denied Mr. Powell's status as an HKS graduate, as explained herein.

**ANSWER**:  Defendants admit HKS "is a school of Harvard University in Cambridge, Massachusetts," that "HKS is a public policy and public administration school and offers master's degrees in public policy, public administration, and international development, as well as several doctoral degree and various executive education programs," and that "Mr. Powell attended HKS from June 1993 to June 1994."  Defendants deny that Mr. Powell "completed all requirements for an MPA degree" and deny that "in June 1994, Mr. Powell received his MPA degree from HKS."  Because the remaining allegations in Paragraph 4 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 4 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

5.      Defendant Charles Haight is resident and citizen of the Commonwealth of Massachusetts.  Defendant Haight is the former Senior Associate Dean for Alumni Relations and Resource Development for HKS, a position at HKS and Harvard University that he held from the summer of 2012 until the fall of 2016.  Mr. Haight is currently a Senior Advisor for Alumni Relations and Resource Development for HKS.  Defendant Haight published false and defamatory statements about Mr. Powell, invaded Mr. Powell's privacy by disclosing and disseminating confidential financial information about Mr. Powell, and has improperly denied Mr. Powell's status as an HKS graduate, as explained herein.

**ANSWER**:  Defendants admit Mr. Haight "is resident and citizen of the Commonwealth of Massachusetts, that he is "the former Senior Associate Dean for Alumni Relations and Resource Development for HKS, a position at HKS and Harvard University that he held from the summer of 2012 until the fall of 2016."  Because the remaining allegations in Paragraph 5 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 5 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

6.      Non-Party Elizabeth Nunez ("Liz Nunez" or "Ms. Nunez") is the former Senior Director of Alumni Relations for HKS, a position she held from June 2013 until July 2016.  Ms. Nunez is currently the Director of Alumni Leadership at Dartmouth College.

**ANSWER**:  Defendants admit that Ms. Nunez "is the former Senior Director of Alumni Relations for HKS, a position she held from June 2013 until July 2016."  Defendants are otherwise without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 6 of the Complaint.

                                      **JURISDICTION AND VENUE**

7.      This Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332 because the Plaintiff and the Defendants are citizens of different States and the amount in controversy exceeds $75,000.

**ANSWER**:  Because the allegations in Paragraph 7 of the Complaint assert conclusions of law, Defendants are not required to plead thereto.

8.      This Court has personal jurisdiction over Defendants under D.C. Code § 13-423, both under subsection (a)(3) because Defendants acted, directly and by their agents, as to a claim for relief arising from its causing tortious injury in the District of Columbia by an act or omission in the District of Columbia, and under subsection (a)(4) because Defendants acted, directly and

by their agents, as to a claim for relief arising from its causing tortious injury in the District of

Columbia by an act or omission outside the District of Columbia and Defendants regularly does

or solicits business, engages in any other persistent course of conduct, or derives substantial

revenue from goods used or consumed, or services rendered, in the District of Columbia.

    **ANSWER**:  Because the allegations in Paragraph 8 of the Complaint assert conclusions

of law, Defendants are not required to plead thereto.

    9.      This Court has personal jurisdiction over Defendants—and the exercise of that

jurisdiction comports with the Due Process Clause of the United States Constitution—because

Defendants expressly aimed and purposefully directed their defamatory statements at Mr.

Powell, a District of Columbia resident, and to other persons in the District of Columbia

(including officers of the HKS DC Alumni Council in the District of Columbia) knowing that the

brunt of the injury would be felt in the District of Columbia.  This Court also has personal

jurisdiction over Defendants because Defendants availed themselves of the District of Columbia

by maintaining an office in the District at 499 S. Capitol St. SW #405, Washington, DC 20003,

by maintaining multiple alumni organizations in the District of Columbia, and by regularly

conducting business in the District of Columbia and receiving benefits from that business in the

District of Columbia.  Defendants have also availed themselves of the District of Columbia by

actively seeking money contributions from citizens of the District of Columbia and routinely, by

their agents, traveling to and from the District of Columbia to recruit students, host events, and

solicit and obtain donations.

    **ANSWER**:  Because the allegations of Paragraph 9 of the Complaint assert conclusions

of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 9

of the Complaint are deemed allegations of fact, Defendants deny each and every allegation
thereof.

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part
of the events giving rise to the claims in this Complaint occurred in this District and because
Defendants are subject to the Court's personal jurisdiction in this District.

**ANSWER**:  Because the allegations in Paragraph 10 of the Complaint assert conclusions
of law, Defendants are not required to plead thereto.

## FACTUAL ALLEGATIONS

### Mr. Powell Builds A Strong Reputation As A Successful Businessman

11.     Over the past forty-three years, Mr. Powell has built a strong reputation as a
successful businessman, investment banker, and leader.

**ANSWER**:  Defendants are without sufficient knowledge or information to form a belief
as to the truth of the allegations in Paragraph 11 of the Complaint, and on that basis deny them.

12.     After graduating from Brown University in 1974 with a Bachelor of Arts degree
in Economics, Mr. Powell began a successful career in the entertainment industry and received
his MBA from Harvard Business School.  Mr. Powell founded HBO Sports and served as the
first Programming Chief at ESPN, becoming the youngest person ever to head sports
programming at a major television network and the only person to start and lead two such
operations.

**ANSWER**:  Defendants admit Powell "received his MBA from Harvard Business
School," and are without sufficient knowledge or information to form a belief as to the truth of
the remaining allegations in Paragraph 12 of the Complaint, and on that basis deny them.

13.     Drawing on his experience in the entertainment industry, Mr. Powell became an
investment banker specializing in media transactions.  Mr. Powell also worked in the Sports

Marketing Group at Philip Morris, as a management consultant at Bain & Company, as an investment banker at Grubb & Ellis, and as a commercial banker at the Bankers Trust Company (now Deutsche Bank).  He was also the Managing Director of SEPowell Capital LLC, an investment and advisory practice specializing in media projects, whose clients included national television networks in the United States, United Kingdom, Ireland, and Canada, as well as cable networks, publishers, broadcasters, advertising agencies, and new media companies.

**ANSWER**:  Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint, and on that basis deny them.

14.     In 1999, Mr. Powell founded and became Managing Director of SinoPowell Capital LLC to focus on international transactions in mining, energy, real estate, aviation, finance, and logistics.  In that role, Mr. Powell has led SinoPowell Capital LLC in transactions in over thirty countries with a combined value in excess of $20 billion.  SinoPowell Capital LLC's clients and partners include private, public, and government entities in the United States and across the world.

**ANSWER**:  Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint, and on that basis deny them.

**<u>Mr. Powell Attends And Graduates From HKS<br>And Receives His MPA Degree</u>**

15.     Having already received his MBA, and in order to further his career, in 1993 Mr. Powell applied to HKS and was admitted as a candidate for a Master of Public Administration degree.

**ANSWER**:  Defendants admit that Powell "received his MBA" and "applied to HKS and was admitted as a candidate for a Master of Public Administration degree," and are without

sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 15 of the Complaint, and on that basis deny them.

16.     Following his acceptance to HKS, Mr. Powell took a year-long leave from his employment to pursue his MPA full-time.  Mr. Powell was a sponsored student of his then-employer, New England Broadcasting, Inc., which paid his HKS tuition in full.

**ANSWER**:  Defendants deny that "Mr. Powell was a sponsored student of his then-employer, New England Broadcasting, Inc., which paid his HKS tuition in full," and are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 16 of the Complaint, and on that basis deny them.

17.     Mr. Powell was a good student at HKS, receiving high marks, being elected a Representative and then elected President of the HKS Student Government, and completing every degree requirement to obtain an MPA.  Mr. Powell received his MPA from HKS in June 1994.

**ANSWER**:  Defendants deny that Powell "complet[ed] every degree requirement to obtain an MPA," and that he "received his MPA from HKS in June 1994," and are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 17 of the Complaint, and on that basis deny them.

18.     In the decades since Mr. Powell's graduation from HKS, HKS has represented to members of the public that Mr. Powell is an HKS graduate and Mr. Powell has been told by HKS that he is a graduate of HKS, has received alumni correspondence from HKS, and has been actively involved in the HKS alumni community and HKS alumni governance organizations.

**ANSWER**:  Defendants admit that Powell received alumni correspondence from HKS, and that he has been involved in certain aspects of the HKS alumni community and an alumni governance organization.  Defendants deny the remaining allegations of paragraph 18.

### Mr. Powell Becomes And Remains Actively Involved In The HKS Alumni Community And Serves As President Of The HKS DC Alumni Council

19.     Following his graduation from HKS and in the decades since his graduation from HKS, Mr. Powell has been an active member of the HKS alumni community, both in general and, specifically, in the HKS Washington DC alumni community, including through participation and service on the HKS DC Alumni Council.  The Council is a 17-member body that represents the 9,000+ HKS graduates in the Washington DC metropolitan area.  Mr. Powell was elected to the council by those graduates to represent them for two consecutive terms.

**ANSWER**:  Defendants admit that the Council is a 17-member body and it represents HKS graduates in the Washington DC metropolitan area, and that Mr. Powell was elected to the council.  Defendants deny the remaining allegations of Paragraph 19.

20.     In 2015, in order to increase his involvement and give back to HKS and its alumni community, both in general and in the DC area, Mr. Powell ran for—and won—the position of President of the HKS DC Alumni Council.

**ANSWER**:  Defendants admit that Mr. Powell ran for and won the position of President of the HKS DC Alumni Council in 2015.  Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 20 of the Complaint, and on that basis deny them.

21.     In 2017, HKS named the HKS DC Alumni Council as "Council of the Year" from amongst its 30+ alumni councils around the world for its performance during 2016, with Mr. Powell serving as Council President for the first half of that year.

**ANSWER**:  Defendants admit that in 2017 HKS awarded the HKS DC Alumni Council the HKS Regional Network Engagement Award and that Mr. Powell served as Council President for a period of time in 2016.  Defendants deny the remaining allegations of Paragraph 21.

22.     During his tenure as Council President, Mr. Powell increased to record levels the number of alumni events held in DC, alumni attendance at events, the Council's bank balance, the Council's mailing list, and the attendance at monthly Council meetings.

**ANSWER**:  Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint, and on that basis deny them.

23.     Among other contributions during his tenure as President, Mr. Powell marshaled his business background to work with members of the HKS DC Alumni Council to create and develop a website for the HKS DC Alumni Council that would, among other things, enable HKS graduates to better connect with the Council and facilitate Council and alumni activities.  To that end, Mr. Powell and the Council devoted significant time and money to develop a website for the Council that they could also share as a template for other regional HKS Alumni Councils to foster greater involvement and connections among the alumni community.

**ANSWER**:  Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 23 of the Complaint, and on that basis deny them.

### Mr. Powell's Meeting With Then-Senior Director Of Alumni Relations Elizabeth Nunez

24.     Although Mr. Powell had informed then-Senior Director of Alumni Relations for HKS Elizabeth Nunez of his and the DC Alumni Council's efforts to develop the website and had offered to provide the website to Ms. Nunez and HKS to use as a template for other councils' websites, Ms. Nunez and HKS contemporaneously (and without informing Mr. Powell) developed a different website to be available for every Alumni Council chapter, thereby

substantially and unnecessarily duplicating efforts and causing the DC Alumni Council to incur

significant unnecessary costs.

**ANSWER**:  Defendants deny the allegations in Paragraph 24 of the Complaint.

25.   Mr. Powell was disappointed that Ms. Nunez and HKS had developed a website

for every Alumni Council without informing the DC Council when they knew that the DC

Council and he were devoting substantial time and incurring significant costs to develop an

alumni website on their own that could be shared with other alumni councils.  Thus, Mr. Powell

requested to meet with Ms. Nunez during the HKS Reunion Weekend in May 2016, when he was

in Cambridge, Massachusetts for meetings with HKS and other Alumni Council leaders.

**ANSWER**:  Defendants admit that Powell demanded to "meet with Ms. Nunez during

the HKS Reunion Weekend in May 2016, when he was in Cambridge, Massachusetts for

meetings with HKS and other Alumni Council leaders," and are without sufficient knowledge or

information to form a belief as to the truth of the remaining allegations in Paragraph 25 of the

Complaint, and on that basis deny them.

26.   Mr. Powell and Ms. Nunez met during the HKS Reunion Weekend in May 2016;

only Mr. Powell and Ms. Nunez were in attendance at the meeting.  During the meeting, Mr.

Powell expressed his disappointment at the duplication of efforts and costs with the website

development projects and the lack of communication from Ms. Nunez and HKS with the DC

Council and him about the projects.

**ANSWER**:  Defendants deny the characterization that Powell merely "expressed his

disappointment at the duplication of efforts and costs with the website development projects and

the lack of communication from Ms. Nunez and HKS with the DC Council and him about the

projects," during his meeting with Ms. Nunez, and otherwise admits that Powell and Ms. Nunez

"met during the HKS Reunion Weekend in May 2016," and that "only Mr. Powell and Ms. Nunez were in attendance at the meeting."

27.     Mr. Powell remained completely professional during the meeting, but Ms. Nunez inexplicably became upset, cried, and threatened to revoke the HKS DC Alumni Council's charter.

**ANSWER**:  Defendants deny the allegations in Paragraph 27 of the Complaint.

28.     Mr. Powell was surprised and troubled by Ms. Nunez's actions during their meeting, but in an effort to maintain a good working relationship with Ms. Nunez and between HKS and the HKS DC Alumni Council, Mr. Powell sent Ms. Nunez flowers after the meeting as a sign of good will.

**ANSWER**:  Defendants admit that Powell "sent Ms. Nunez flowers after the meeting", and otherwise deny the remaining allegations in paragraph 28.

29.     On information and belief, Ms. Nunez told then-Senior Associate Dean for Alumni Relations and Resource Development for HKS Charles Haight about her meeting with Mr. Powell and, in so doing, misrepresented many details of the meeting and falsely alleged that Mr. Powell behaved inappropriately during the meeting.

**ANSWER**:  Defendants admit Ms. Nunez told Mr. Haight about her meeting with Powell, and deny all other allegations in Paragraph 29 of the Complaint.

30.     Haight never reached out to ask Mr. Powell about his meeting with Ms. Nunez.

**ANSWER**:  Defendants admit that Haight did not personally speak to Powell about the meeting, and otherwise deny the allegations in Paragraph 30 of the Complaint.

**Defendants Make False And Defamatory Statements About Mr. Powell**

31.    On June 10, 2016, Defendant Haight, acting in his capacity as Senior Advisor and employee of HKS, sent an email to Mr. Powell and three additional persons—Sarah Wald, Wendy Pangburn, and Liz Nunez—in which he made false and defamatory statements about Mr. Powell.

**ANSWER**:  Because the allegations in Paragraph 31 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 31 of the Complaint are deemed allegations of fact, Defendants admit that Haight sent an email to Powell on June 10, 2016, which was copied to the other three persons alleged, and otherwise deny the allegations in paragraph 31.

32.    Affirming that he was acting in his official capacity as an officer of HKS and Harvard University, Haight began his email by writing "As a senior officer of HKS responsible for Alumni Relations, I have been asked to reach out to you on two matters of serious concern."

**ANSWER**:  Because the allegations in Paragraph 32 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 32 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

33.    In that email, Defendant Haight first falsely accused Mr. Powell of not being a graduate of HKS.  Haight wrote that "you [Mr. Powell] have a significant outstanding debt from the 1994 academic year in the amount of $22k while you were enrolled in the mid-career MPA program," and wrote that "your degree was not conferred due to this outstanding debt."  Haight further wrote that "[t]his is problematic for the School, and as a matter of policy, you cannot be considered a graduate of Harvard Kennedy School until this is remedied."

**ANSWER**:  Because the allegations in Paragraph 33 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 33 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

34.     These statements are false and defamatory.  Mr. Powell's employer at the time he enrolled at HKS, New England Broadcasting, Inc., paid his tuition in full after he enrolled in HKS's MPA Program.  Mr. Powell successfully completed all requirements for obtaining an MPA from HKS and graduated from HKS and received his MPA degree.

**ANSWER**:  Because the allegations in Paragraph 34 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 34 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

35.     Indeed, HKS has repeatedly recognized Mr. Powell as an HKS graduate over the decades since he graduated, through numerous correspondence and throughout Mr. Powell's significant alumni organization involvement.

**ANSWER**:  Defendants deny the allegations of Paragraph 35.

36.     In fact, as recently as May 8, 2016—a month before Haight sent his false and defamatory email—Ms. Nunez wrote to Mr. Powell that "we still very much count you as a member of the alumni community and you are still eligible to lead the Council, etc."

**ANSWER**:  Because the allegations in Paragraph 36 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 36 of the Complaint are deemed allegations of fact, Defendants respond that the referenced communication speaks for itself, and otherwise deny each and every allegation thereof.

37.     In Haight's June 10, 2016 email, he further accused Mr. Powell of improper and unprofessional "interactions with staff," and in particular inappropriate "behavior" during his meeting with Ms. Nunez.  Haight accused Mr. Powell of "berat[ing]" Ms. Nunez and "us[ing] threatening language towards [Ms. Nunez] in a closed room."

**ANSWER**:  Defendants respond that the referenced email communication speaks for itself.

38.     Haight expressly emphasized that he was accusing Mr. Powell of inappropriate actions, writing: "I cannot say strongly enough how seriously we take this.  Such behavior toward any member of the Kennedy School community at any time is inappropriate and unacceptable."

**ANSWER**:  Defendants respond that the referenced email communication speaks for itself.

39.     Haight continued:

It is of course our expectation that any officer of an HKS Alumni Council comport himself appropriately, and comply with all policies and standards of behavior of HKS.  Incurring debt for classes taken and treating staff disrespectfully are not consistent with the values of HKS. As such, we have taken the position that you should not serve as an officer of the DC Council.

Given this, we believe it is in everyone's best interests that you should not run for re-election as President of the DC Alumni Council and should not seek elected offices.

**ANSWER**:  Defendants respond that the referenced email communication speaks for itself.

40.     These statements are false and defamatory.  Mr. Powell did not behave inappropriately, improperly, unprofessionally, or unacceptably.  Mr. Powell did not "berate[]" Ms. Nunez.  Mr. Powell did not "use[] threatening language towards [Nunez] in a closed room."

Mr. Powell did not "treat[] staff disrespectfully" or in a way inconsistent "with the values of HKS."  Mr. Powell did not act in violation of "policies and standards of behavior at HKS."  To the contrary, Mr. Powell has always acted professionally and with composure, including during his meeting with Ms. Nunez, and despite Ms. Nunez's unprofessional behavior during that meeting.

**ANSWER**:  Defendants deny the allegations in Paragraph 40 of the Complaint.

41.     Haight sent his defamatory email from his official HKS/Harvard University email account, and he signed his email "Charlie Haight | Senior Associate Dean | Alumni Relations and Resource Development | Harvard Kennedy School."

**ANSWER**:  Because the allegations in Paragraph 40 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 40 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

42.     Haight never inquired with Mr. Powell about the subjects or substance of his allegations before making them and did not allow Mr. Powell to dispute or explain why those accusations are false.

**ANSWER**:  Defendants admit that Haight did not personally speak to Powell about the e-mail, and otherwise deny the remaining allegations in paragraph 42.

43.     Upon information and belief, Haight, acting in his official capacity as HKS Senior Associate Dean of Alumni Relations and Resource Development, shared his June 10, 2016 email with additional persons, including Jayme Johnson (Vice President of the HKS DC Alumni Council), Lisa-Joy Zgorski (Treasurer of the HKS DC Alumni Council), and John Haederle (Secretary of the HKS DC Alumni Council).

**ANSWER**:  Defendants are without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 43 of the Complaint, and on that basis deny them.

44.     The fact that Haight shared his email and false and defamatory statements with Mr. Johnson, Ms. Zgorski, and Mr. Haederle is indicated by the fact that they emailed Mr. Powell on June 12, 2016 stating that Haight's accusations had been shared with them.

**ANSWER**:  Because the allegations in Paragraph 44 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 44 are deemed allegations of fact, Defendants are without sufficient knowledge or information to form a belief as to the truth of them, and on that basis deny them.

**Defendants Invade Mr. Powell's Privacy By
Disclosing And Disseminating Information Relating To Mr. Powell's Financial Status**

45.     In the June 10, 2016 email, Haight and HKS invaded Mr. Powell's privacy by disclosing confidential information related to Mr. Powell's financial situation.

**ANSWER**:  Because the allegations in Paragraph 45 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 45 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

46.     Despite this sensitive nature of financial information, Haight, acting in his official capacity "[a]s a senior officer of HKS responsible for Alumni Relations," and for and on behalf of HKS, Harvard University, and himself, disclosed Mr. Powell's alleged financial status to persons without Mr. Powell's consent.

**ANSWER**:  Because the allegations in Paragraph 46 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 46

of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

47.     Haight, "[a]s a senior officer of HKS responsible for Alumni Relations," disclosed information about Mr. Powell's financial situation by writing in his June 10, 2016 email that "information that we recently received from the Office of Financial Services [indicates] that you [Mr. Powell] have a significant amount of outstanding debt from the 1994 academic year in the amount of $22k while you were enrolled in the mid-career MPA program," and that "[t]heir records indicate that your degree was not conferred due to this outstanding debt."  Haight further disclosed and disseminated financial information about Mr. Powell by sharing the allegations in that email with additional persons, including, at the very least, Jayme Johnson, Lisa-Joy Zgorski, and John Haederle.

**ANSWER**:  Because the allegations in Paragraph 47 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 47 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

48.     Although the financial information in Haight's June 10, 2016 email is false, such financial information is nonetheless personal, confidential, and sensitive in nature.

**ANSWER**:  Because the allegations in Paragraph 48 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 48 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

49.     Mr. Powell had and has an expectation of privacy in financial information about him maintained by his alma mater.  Mr. Powell did not give Defendants permission to disclose information about his alleged educational debt to anyone.

**ANSWER**:  Because the allegations in Paragraph 49 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 49 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

50.     By disclosing this information, Defendants impermissibly invaded Mr. Powell's privacy.

**ANSWER**:  Because the allegations in Paragraph 50 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 50 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

**Defendants' Defamatory Statements And Invasions Of Mr. Powell's Privacy
Cause Significant Harm To Mr. Powell**

51.     Defendants' false and defamatory statements and invasions of Mr. Powell's privacy caused Mr. Powell significant harm and damage.

**ANSWER**:  Because the allegations in Paragraph 51 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 51 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

52.     Mr. Powell has suffered severe reputational harm as a result of Defendants' false and defamatory statements and invasions of Mr. Powell's privacy.  Defendants recklessly portrayed Mr. Powell as a fraud, a debtor, and a threatening, unprofessional person.

**ANSWER**:  Because the allegations in Paragraph 52 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 52 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

53.     Mr. Powell's reputational harm is presumed because Defendants' statements about him are defamatory per se because those statements—accusing Mr. Powell of falsely and fraudulently holding himself out as an HKS graduate, "berat[ing]" Ms. Nunez, "us[ing] threatening language towards [Ms. Nunez] in a closed room," engaging in "inappropriate ... behavior," and acting in violation of "policies and standards of behavior at HKS"—accuse Mr. Powell of engaging in conduct incompatible with his profession.

**ANSWER**:  Because the allegations in Paragraph 53 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 53 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

54.     Reflecting some of the initial damage that Defendants' false and defamatory statements and invasions of Mr. Powell's privacy caused Mr. Powell, on June 13, 2016, Mr. Johnson, Ms. Zgorski, and Mr. Haederle sent Mr. Powell an email—in response to an email from Mr. Powell explaining the falsity of Haight's accusation—stating:

> Due to the seriousness of the two allegations, and the fact that HKS senior management has deemed the situation serious enough to formally put them in writing, the rest of the Executive Committee is in agreement that it would not be appropriate for you to continue your Council role at the moment. The appropriate response is for you to suspend all your Council commitments (including your position as President) until HKS responds to your account....

> For you to continue in any role on the Council while these serious allegations are outstanding risks compromising the reputation of the Council.

**ANSWER**:  Because the allegations in Paragraph 54 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 54 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

55.     As a direct and proximate result of Defendants' false and defamatory statements and invasions of Mr. Powell's privacy, Mr. Powell lost his seat as President of the HKS DC Alumni Council.

**ANSWER**:  Because the allegations in Paragraph 55 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 55 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

56.     Defendants' false and defamatory statements and invasions of Mr. Powell's privacy have caused Mr. Powell to suffer embarrassment and humiliation.

**ANSWER**:  Because the allegations in Paragraph 56 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 56 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

## Mr. Powell And Defendants Enter Into A Tolling Agreement

57.     On June 8, 2017, Mr. Powell and Defendants entered into a Statute of Limitations Tolling Agreement ("Tolling Agreement") whereby they agreed to toll the running of any applicable statutes of limitation relating to the claims in this Complaint during the period commencing on June 8, 2017 and ending on June 22, 2017 (the "Tolling Period").  Through the Tolling Agreement, the parties agreed that the Tolling Period is to be excluded from any

calculation of time for the purpose of pleading or asserting any otherwise applicable statutes of limitation or repose, or other time bar, as a bar to this action and the claims in this Complaint and the action commenced by filing this Complaint. As such, the claims below are all timely.

**ANSWER**:  Defendants admit the allegations of paragraph 57.

**COUNT ONE**
**DEFAMATION**
**(STATEMENTS ABOUT ACTIONS DURING MEETING WITH MS. NUNEZ)**
**(AGAINST ALL DEFENDANTS)**

58.      Mr. Powell repeats and re-alleges the allegations in Paragraphs 1-57 as if set forth fully herein.

**ANSWER**:  Defendants incorporate by reference their responses in paragraphs 1-57 above as if fully set forth herein.

59.      Defendants published false and defamatory statements of fact regarding Mr. Powell in the June 10, 2016 email from then-Senior Associate Dean for Alumni Relations and Resource Development Charles Haight to Sarah Wald, Wendy Pangburn, and Liz Nunez (the "June 10, 2016 Email").  The June 10, 2016 Email is attached hereto as Exhibit A.

**ANSWER**:  Because the allegations in Paragraph 59 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 59 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

60.      The June 10, 2016 Email contains the following false and defamatory statements of fact:

     (a)      Mr. Powell engaged in "inappropriate and unacceptable" "behavior" and "interactions with staff";

     (b)      Mr. Powell "berated" Ms. Nunez and "used threatening language towards [Ms. Nunez] in a closed room";

     (c)      Mr. Powell "treat[ed] staff disrespectfully"; and

     (d)      Mr. Powell acted in violation of "policies and standards of behavior at HKS."

**ANSWER**:  Because the allegations in Paragraph 60 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 60 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof, including all sub-paragraphs thereto.

61.     These statements of fact are of and concerning Mr. Powell.  In fact, the June 10, 2016 Email is addressed "Dear Steve," and refers to Mr. Powell by name and by his position as President of the HKS DC Alumni Council.

**ANSWER**:  Because the allegations in Paragraph 61 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 61 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

62.     These statements are reasonably understood to be statements of and concerning Mr. Powell and were in fact understood by persons reading them to be statements of and concerning Mr. Powell.

**ANSWER**:  Because the allegations in Paragraph 62 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 62 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

63.     These statements are reasonably understood to be statements of fact regarding Mr. Powell and were reasonably understood by persons reading them to be statements of fact regarding Mr. Powell.

**ANSWER**:  Because the allegations in Paragraph 63 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 63 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

64.     These statements are false.  Mr. Powell did not behave inappropriately, improperly, unprofessionally, or unacceptably. Mr. Powell did not "berate[]" Ms. Nunez.  Mr. Powell did not "use[] threatening language towards [Nunez] in a closed room."  Mr. Powell did not "treat[] staff disrespectfully."  Mr. Powell did not act in violation of "policies and standards of behavior at HKS."  To the contrary, Mr. Powell has always acted professionally and with composure, including during his meeting with Ms. Nunez, and despite Ms. Nunez's unprofessional behavior during that meeting.

**ANSWER**:  Defendants deny the allegations in Paragraph 64.

65.     These statements are defamatory.  They accuse Mr. Powell of acting inappropriately, unprofessionally, and out of compliance with accepted norms of behavior. Indeed, the substantial danger of injury to Mr. Powell's reputation from these statements is readily apparent.  These statements would tend to hold Mr. Powell up to scorn, hatred, ridicule, or contempt in the minds of any considerable and respectable segment in the community.

**ANSWER**:  Because the allegations in Paragraph 65 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 65

of the Complaint are deemed allegations of fact, Defendants respond that the referenced email

communication speaks for itself, and otherwise deny each and every allegation thereof.

66.     By publication of these statements, Defendants did hold Mr. Powell up to scorn,

hatred, ridicule, or contempt in the minds of a considerable and respectable segment in the

community.

**ANSWER**:  Because the allegations in Paragraph 66 of the Complaint assert conclusions

of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 66

of the Complaint are deemed allegations of fact, Defendants respond that the referenced email

communication speaks for itself, and otherwise deny each and every allegation thereof.

67.     These statements are defamatory per se because they tend to subject, and have

indeed subjected, Mr. Powell to hatred, distrust, ridicule, contempt, or disgrace, and because they

may prejudice, and indeed have prejudiced, Mr. Powell in his profession or business, including

by accusing Mr. Powell of conduct incompatible with his profession as a businessman and

investment banker.

**ANSWER**:  Because the allegations in Paragraph 67 of the Complaint assert conclusions

of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 67

of the Complaint are deemed allegations of fact, Defendants respond that the referenced email

communication speaks for itself, and otherwise deny each and every allegation thereof.

68.     Defendants' publication of these false and defamatory statements was negligent at

a minimum.  Defendants never contacted Mr. Powell individually or inquired with him about the

subjects or substance of his allegations before making them and did not allow Mr. Powell to

dispute or explain why those accusations are false before Defendants published them to other

persons.

26

**ANSWER**:  Because the allegations in Paragraph 68 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 68 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

69.     Defendants made these defamatory statements intentionally, willfully, maliciously, and in conscious disregard of Mr. Powell's rights and reputation and of the truth.

**ANSWER**:  Because the allegations in Paragraph 69 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 69 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

70.     Defendants had no applicable privilege or legal authorization to publish these false and defamatory statements or, if they did, they abused that privilege.

**ANSWER**:  Because the allegations in Paragraph 70 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 70 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

71.     In addition to injuries presumed by law, these defamatory falsehoods have injured—and will continue to injure—Mr. Powell in at least the following ways:

(a)     By impugning Mr. Powell's professional and personal reputations;

(b)     By ascribing to Mr. Powell conduct that would adversely affect his fitness for proper conduct as a businessman, investment banker, leader, and member of the HKS alumni community; and

(c)     By causing Mr. Powell damages in other ways yet to be determined.

**ANSWER**:  Because the allegations in Paragraph 71 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 71 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

72.     Defendants are liable to Mr. Powell for compensatory damages arising out of their defamation of Mr. Powell.

**ANSWER**:  Because the allegations in Paragraph 72 of the Complaint assert conclusions of law, Defendants are not required to plead thereto.

73.     Defendants are also liable to Mr. Powell for punitive damages because of the wanton and outrageous nature of their defamation.

**ANSWER**:  Because the allegations in Paragraph 73 of the Complaint assert conclusions of law, Defendants are not required to plead thereto.

**COUNT TWO**
**DEFAMATION**
**(STATEMENTS ABOUT MR. POWELL'S STATUS AS AN HKS GRADUATE)**
**(AGAINST ALL DEFENDANTS)**

74.     Mr. Powell repeats and re-alleges the allegations in Paragraphs 1-57 as if set forth fully herein.

**ANSWER**:  Defendants incorporate by reference their responses in paragraphs 1-73 above as if fully set forth herein.

75.     Defendants published false and defamatory statements of fact regarding Mr. Powell in the June 10, 2016 email from then-Senior Associate Dean for Alumni Relations and Resource Development Haight to Sarah Wald, Wendy Pangburn, and Liz Nunez (the "June 10, 2016 Email").  The June 10, 2016 Email is attached hereto as Exhibit A.

**ANSWER**:  Because the allegations in Paragraph 75 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 75 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

76.    The June 10, 2016 Email contains the following false and defamatory statements of fact:

> (a)    Mr. Powell incurred and has "a significant outstanding debt from the 1994 academic year in the amount of $22k while you were enrolled in the mid-career MPA program"; and
>
> (b)    Mr. Powell's "degree was not conferred due to this outstanding debt" and "as a matter of policy, [Mr. Powell] cannot be considered a graduate of Harvard Kennedy School until this is remedied."

**ANSWER**:  Because the allegations in Paragraph 76 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 76 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

77.    These statements of fact are of and concerning Mr. Powell.  In fact, the June 10, 2016 Email is addressed "Dear Steve," and refers to Mr. Powell by name and by his position as President of the HKS DC Alumni Council.

**ANSWER**:  Because the allegations in Paragraph 77 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 77 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

78.    These statements are reasonably understood to be statements of and concerning Mr. Powell and were in fact understood by persons reading them to be statements of and concerning Mr. Powell.

**ANSWER**:  Because the allegations in Paragraph 78 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 78 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

79.     These statements are reasonably understood to be statements of fact regarding Mr. Powell and were reasonably understood by persons reading them to be statements of fact regarding Mr. Powell.

**ANSWER**:  Because the allegations in Paragraph 79 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 79 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

80.     These statements are false.  Mr. Powell does not have "a significant outstanding debt from the 1994 academic year in the amount of $22k while [he was] enrolled in the mid-career MPA program," Mr. Powell successfully completed all requirements at HKS for his MPA degree, HKS did confer an MPA degree on Mr. Powell and Mr. Powell is a graduate of HKS.  In fact, Defendants have repeatedly recognized Mr. Powell as an HKS graduate for over two decades, including as recently as May 8, 2016.

**ANSWER**:  Defendants deny the allegations in paragraph 80.

81.     These statements are defamatory.  They accuse Mr. Powell of incurring and failing to pay back debt and falsely representing himself as an HKS graduate.  Indeed, the substantial danger of injury to Mr. Powell's reputation from these statements is readily apparent.  These statements would tend to hold Mr. Powell up to scorn, hatred, ridicule, or contempt in the minds of any considerable and respectable segment in the community.

**ANSWER**:  Because the allegations in Paragraph 81 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 81 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

82.     By publication of these statements, Defendants did hold Mr. Powell up to scorn, hatred, ridicule, or contempt in the minds of a considerable and respectable segment in the community.

**ANSWER**:  Because the allegations in Paragraph 82 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 82 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

83.     These statements are defamatory per se because they tend to subject, and have indeed subjected, Mr. Powell to hatred, distrust, ridicule, contempt, or disgrace, and because they may prejudice, and indeed have prejudiced, Mr. Powell in his profession or business, including by accusing Mr. Powell of conduct incompatible with his profession as a businessman and investment banker.

**ANSWER**:  Because the allegations in Paragraph 83 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 83 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

84.     Defendants' publication of these false and defamatory statements was negligent at a minimum.  Defendants never contacted Mr. Powell individually or inquired with him about the subjects or substance of his allegations before making them and did not allow Mr. Powell to

dispute or explain why those accusations are false before Defendants published them to other persons.

**ANSWER**:  Because the allegations in Paragraph 84 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 84 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

85.     Defendants made these defamatory statements intentionally, willfully, maliciously, and in conscious disregard of Mr. Powell's rights and reputation and of the truth.

**ANSWER**:  Because the allegations in Paragraph 85 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 85 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

86.     Defendants had no applicable privilege or legal authorization to publish these false and defamatory statements or, if they did, they abused that privilege.

**ANSWER**:  Because the allegations in Paragraph 86 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 86 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

87.     In addition to injuries presumed by law, these defamatory falsehoods have injured—and will continue to injure—Mr. Powell in at least the following ways:

(a)     By impugning Mr. Powell's professional and personal reputations;
(b)     By ascribing to Mr. Powell conduct that would adversely affect his fitness for proper conduct as a businessman, investment banker, leader, and member of the HKS alumni community; and
(c)     By causing Mr. Powell damages in other ways yet to be determined.

32

**ANSWER**:  Because the allegations in Paragraph 87 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 87 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

88.    Defendants are liable to Mr. Powell for compensatory damages arising out of their defamation of Mr. Powell.

**ANSWER**:  Because the allegations in Paragraph 88 of the Complaint assert conclusions of law, Defendants are not required to plead thereto.

89.    Defendants are also liable to Mr. Powell for punitive damages because of the wanton and outrageous nature of their defamation.

**ANSWER**:  Because the allegations in Paragraph 89 of the Complaint assert conclusions of law, Defendants are not required to plead thereto.

**COUNT THREE**
**INVASION OF PRIVACY**
**(STATEMENTS RELEASING CONFIDENTIAL FINANCIAL INFORMATION)**
**(AGAINST ALL DEFENDANTS)**

90.    Mr. Powell repeats and re-alleges the allegations in Paragraphs 1-57 as if set forth fully herein.

**ANSWER**:  Defendants incorporate by reference their responses in paragraphs 1-89 above as if fully set forth herein.

91.    Defendants disclosed and disseminated confidential financial information about Mr. Powell without Mr. Powell's permission.

**ANSWER**:  Defendants deny the allegations in Paragraph 91.

92.    Defendants improperly disclosed and disseminated confidential information about Mr. Powell's financial situation when Defendant Haight, acting in his capacity "[a]s a senior

officer of HKS responsible for Alumni Relations," made statements allegedly disclosing Mr.

Powell's tuition payments and purported graduate status in his June 10, 2016 email to Sarah

Wald, Wendy Pangburn, and Liz Nunez (the "June 10, 2016 Email"), the contents of which

Defendants also shared with other persons, including at least Jayme Johnson, Lisa-Joy Zgorski,

and John Haederle.

**ANSWER**:  Defendants deny the allegations in Paragraph 92.

93.     Defendants disclosed and disseminated confidential financial information about

Mr. Powell without Mr. Powell's permission in the June 10, 2016 email from then-Senior

Associate Dean for Alumni Relations and Resource Development Haight to Sarah Wald, Wendy

Pangburn, and Liz Nunez (the "June 10, 2016 Email")—and when Defendants shared the

information in that email with additional persons including, at the very least, Jayme Johnson,

Lisa-Joy Zgorski, and John Haederle. The June 10, 2016 Email is attached hereto as Exhibit A.

**ANSWER**:  Defendants deny the allegations in Paragraph 93.

94.     The June 10, 2016 Email disclosed the following private, confidential, financial

information:

(a)     "[I]nformation that we [HKS] recently received from the Office of
Financial Services [indicates] that you [Mr. Powell] have a significant
amount of outstanding debt from the 1994 academic year in the amount of
$22k while you were enrolled in the mid-career MPA program"; and

(b)     "Their [Office of Financial Services] records indicate that your degree was
not conferred due to this outstanding debt."

**ANSWER**:  Because the allegations in Paragraph 94 of the Complaint assert conclusions

of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 94

of the Complaint are deemed allegations of fact, Defendants respond that the referenced email

communication speaks for itself, and otherwise deny each and every allegation thereof.

95.     This information was private.  It was of a highly personal or intimate nature.  Mr. Powell had an expectation of privacy in information surrounding his financial situation, because information related to one's financial status is highly personal and sensitive.

**ANSWER**:  Because the allegations in Paragraph 95 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 95 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

96.     Defendants published the facts to at least the following people: Ms. Nunez, Wendy Pangburn, Sarah Wald, Jayme Johnson, Lisa-Joy Zgorski, and John Haederle.

**ANSWER**:  Because the allegations in Paragraph 96 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 96 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

97.     Defendants did not have a privilege, legal authorization, or right to disclose or publish the information or, if they did, they abused that privilege, legal authorization, or right.

**ANSWER**:  Because the allegations in Paragraph 97 of the Complaint assert conclusions of law, Defendants are not required to plead thereto.

98.     No person to whom this information was disclosed had a legitimate concern in them.  The disclosure and invasion was both unreasonable and serious or substantial.

**ANSWER**:  Because the allegations in Paragraph 98 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 98 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

99.     Disclosing and publishing the facts caused Mr. Powell to suffer embarrassment, shame, and humiliation.  Disclosing and publishing such facts would cause suffering, embarrassment, shame, and humiliation in any person of ordinary sensibilities.

**ANSWER**:  Because the allegations in Paragraph 99 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 99 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

100.     Disclosing and publishing the facts caused Mr. Powell actual harm because they resulted in him losing his position as President of the HKS DC Alumni Council.

**ANSWER**:  Defendants deny the allegations in Paragraph 100 of the Complaint.

**COUNT FOUR**
**FALSE LIGHT**
**(STATEMENTS ABOUT ACTIONS DURING MEETING WITH MS. NUNEZ)**
**(AGAINST ALL DEFENDANTS)**

101.     Mr. Powell repeats and re-alleges the allegations in Paragraphs 1-100 as if set forth fully herein.

**ANSWER**:  Defendants incorporate by reference their responses in paragraphs 1-100 above as if fully set forth herein.

102.     Defendants published false statements of fact regarding Mr. Powell that placed Mr. Powell in a false light in the June 10, 2016 email from then-Senior Associate Dean for Alumni Relations and Resource Development Haight to Sarah Wald, Wendy Pangburn, and Liz Nunez (the "June 10, 2016 Email").  The June 10, 2016 Email is attached hereto as Exhibit A.

**ANSWER**:  Defendants deny the allegations in Paragraph 102 of the Complaint.

103.     The June 10, 2016 Email contains the following false statements of fact that placed Mr. Powell in a false light:

(a)   Mr. Powell engaged in "inappropriate and unacceptable" "behavior" and "interactions with staff";

(b)   Mr. Powell "berated" Ms. Nunez and "used threatening language towards [Ms. Nunez] in a closed room";

(c)   Mr. Powell "treat[ed] staff disrespectfully"; and

(d)   Mr. Powell acted in violation of "policies and standards of behavior at HKS."

**ANSWER**:  Because the allegations in Paragraph 103 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 103 of the Complaint are deemed allegations of fact, Defendants deny the allegations in Paragraph 103 of the Complaint.

104.   These statements of fact are of and concerning Mr. Powell.  In fact, the June 10, 2016 Email is addressed "Dear Steve," and refers to Mr. Powell by name and by his position as President of the HKS DC Alumni Council.

**ANSWER**:  Because the allegations in Paragraph 104 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 104 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself.

105.   These statements are reasonably understood to be statements of and concerning Mr. Powell and were in fact understood by persons reading them to be statements of and concerning Mr. Powell.

**ANSWER**:  Because the allegations in Paragraph 105 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 105 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

106.    These statements are reasonably understood to be statements of fact regarding Mr. Powell and were reasonably understood by persons reading them to be statements of fact regarding Mr. Powell.

**ANSWER**:  Because the allegations in Paragraph 106 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 106 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

107.    These statements are false.  Mr. Powell did not behave inappropriately, improperly, unprofessionally, or unacceptably.  Mr. Powell did not "berate[]" Ms. Nunez.  Mr. Powell did not "use[] threatening language towards [Nunez] in a closed room."  Mr. Powell did not "treat[] staff disrespectfully."  Mr. Powell did not act in violation of "policies and standards of behavior at HKS."  To the contrary, Mr. Powell has always acted professionally and with composure, including during his meeting with Ms. Nunez, and despite Ms. Nunez's unprofessional behavior during that meeting.

**ANSWER**:  Defendants deny the allegations in Paragraph 107 of the Complaint.

108.    These statements placed Mr. Powell in a false light that would be offensive to a reasonable person.  These statements placed Mr. Powell in a light that suggests he threatens colleagues during professional meetings, violates codes of conduct, and engages in other unprofessional and intimidating behavior in professional contexts.

**ANSWER**:  Because the allegations in Paragraph 108 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in

Paragraph 108 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

109.    In addition to injuries presumed by law, these falsehoods have injured—and will continue to injure—Mr. Powell in at least the following ways:

      (a)    By impugning Mr. Powell's professional and personal reputations;

      (b)    By ascribing to Mr. Powell conduct that would adversely affect his fitness for proper conduct as a businessman, investment banker, leader, and member of the HKS alumni community; and

      (c)    By causing Mr. Powell damages in other ways yet to be determined.

**ANSWER**:  Because the allegations in Paragraph 109 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 109 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

110.    Defendants are liable to Mr. Powell for compensatory damages arising out of the false light in which they placed Mr. Powell.

**ANSWER**:  Because the allegations in Paragraph 110 of the Complaint assert conclusions of law, Defendants are not required to plead thereto.

111.    Defendants are also liable to Mr. Powell for punitive damages because of the wanton and outrageous nature of the false light in which they placed Mr. Powell.

**ANSWER**:  Because the allegations in Paragraph 111 of the Complaint assert conclusions of law, Defendants are not required to plead thereto.

**COUNT FIVE**
**FALSE LIGHT**
**(STATEMENTS ABOUT MR. POWELL'S STATUS AS AN HKS GRADUATE)**
**(AGAINST ALL DEFENDANTS)**

112.   Mr. Powell repeats and re-alleges the allegations in Paragraphs 1-57 as if set forth fully herein.

**ANSWER**:  Defendants incorporate by reference their responses in paragraphs 1-57 above as if fully set forth herein.

113.   Defendants published false statements of fact regarding Mr. Powell that placed Mr. Powell in a false light in the June 10, 2016 email from then-Senior Associate Dean for Alumni Relations and Resource Development Haight to Sarah Wald, Wendy Pangburn, and Liz Nunez (the "June 10, 2016 Email").  The June 10, 2016 Email is attached hereto as Exhibit A.

**ANSWER**:  Because the allegations in Paragraph 113 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 113 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

114.   The June 10, 2016 Email contains the following false statements of fact that placed Mr. Powell in a false light:

(a)   Mr. Powell incurred and has "a significant outstanding debt from the 1994 academic year in the amount of $22k while you were enrolled in the mid-career MPA program"; and

(b)   Mr. Powell's "degree was not conferred due to this outstanding debt" and "as a matter of policy, [Mr. Powell] cannot be considered a graduate of Harvard Kennedy School until this is remedied."

**ANSWER**:  Because the allegations in Paragraph 114 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 114 of the Complaint are deemed allegations of fact, Defendants respond that the

referenced email communication speaks for itself, and otherwise deny each and every allegation in Paragraph 114 of the Complaint.

115.     These statements of fact are of and concerning Mr. Powell.  In fact, the June 10, 2016 Email is addressed "Dear Steve," and refers to Mr. Powell by name and by his position as President of the HKS DC Alumni Council.

**ANSWER**:  Because the allegations in Paragraph 115 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 115 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

116.     These statements are reasonably understood to be statements of and concerning Mr. Powell and were in fact understood by persons reading them to be statements of and concerning Mr. Powell.

**ANSWER**:  Because the allegations in Paragraph 116 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 116 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

117.     These statements are reasonably understood to be statements of fact regarding Mr. Powell and were reasonably understood by persons reading them to be statements of fact regarding Mr. Powell.

**ANSWER**:  Because the allegations in Paragraph 117 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in

Paragraph 117 of the Complaint are deemed allegations of fact, Defendants respond that the referenced email communication speaks for itself, and otherwise deny each and every allegation thereof.

118.     These statements are false.  Mr. Powell does not have "a significant outstanding debt from the 1994 academic year in the amount of $22k while [he was] enrolled in the mid-career MPA program," Mr. Powell successfully completed all requirements at HKS for his MPA degree, HKS did confer an MPA degree on Mr. Powell and Mr. Powell is a graduate of HKS.  In fact, Defendants have repeatedly recognized Mr. Powell as an HKS graduate for over two decades, including as recently as May 8, 2016.

**ANSWER**:  Defendants deny the allegations in Paragraph 118 of the Complaint.

119.     These statements placed Mr. Powell in a false light that would be offensive to a reasonable person. Defendants place Mr. Powell in a false light that suggests he has falsely and fraudulently claimed to be a graduate of HKS and that Mr. Powell incurs and does not repay debts.

**ANSWER**:  Because the allegations in Paragraph 119 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 119 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

120.     In addition to injuries presumed by law, these falsehoods have injured—and will continue to injure—Mr. Powell in at least the following ways:

    (a)      By impugning Mr. Powell's professional and personal reputations;

    (b)      By ascribing to Mr. Powell conduct that would adversely affect his fitness for proper conduct as a businessman, investment banker, leader, and member of the HKS alumni community; and

    (c)      By causing Mr. Powell damages in other ways yet to be determined.

**ANSWER**:  Because the allegations in Paragraph 120 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 120 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

121.    Defendants are liable to Mr. Powell for compensatory damages arising out of the false light in which they placed Mr. Powell.

**ANSWER**:  Because the allegations in Paragraph 121 of the Complaint assert conclusions of law, Defendants are not required to plead thereto.

122.    Defendants are also liable to Mr. Powell for punitive damages because of the wanton and outrageous nature of the false light in which they placed Mr. Powell.

**ANSWER**:  Because the allegations in Paragraph 122 of the Complaint assert conclusions of law, Defendants are not required to plead thereto.

## COUNT SIX
## PROMISSORY ESTOPPEL
## (AGAINST ALL DEFENDANTS)

123.    Mr. Powell repeats and re-alleges the allegations in Paragraphs 1-57 as if set forth fully herein.

**ANSWER**:  Defendants incorporate by reference their responses in paragraphs 1-57 above as if fully set forth herein.

124.    Throughout the past twenty-three years since Mr. Powell graduated from HKS, Defendants have told and promised to Mr. Powell and represented, including publicly, both to Mr. Powell and others, that Mr. Powell was and is a graduate of HKS and that he was and is a member of the HKS alumni community.

**ANSWER**:  Defendants deny the allegations in Paragraph 124 of the Complaint.

125.     Defendants have done so by conferring an MPA degree from HKS on Mr. Powell in June 1994, by expressly telling Mr. Powell that he is a graduate of HKS and member of the HKS alumni community, and by including Mr. Powell in numerous alumni communications, and allowing Mr. Powell to be a member of and participate in HKS alumni organizations and events.

**ANSWER**:  Defendants deny the allegations in Paragraph 125 of the Complaint.

126.     Defendants' representations that Mr. Powell was and is a graduate of HKS and that he was and is a member of the HKS alumni community were intended to induce Mr. Powell to rely on the representations and to devote significant time and energy and to expend money on Defendants and their alumni organizations.

**ANSWER**:  Defendants deny the allegations in Paragraph 126 of the Complaint.

127.     A reasonable person would rely upon these representations and promises by Defendants.

**ANSWER**:  Defendants deny the allegations in Paragraph 127 of the Complaint.

128.     Mr. Powell did in fact reasonably rely—to his detriment—on the representations by Defendants.

**ANSWER**:  Defendants deny the allegations in Paragraph 128 of the Complaint.

129.     Over the past two decades, Mr. Powell has devoted significant time and energy, and expended substantial funds to HKS and the HKS alumni community, because he is a graduate of HKS, as repeatedly stated by Defendants.

**ANSWER**:  Defendants deny the allegations in Paragraph 129 of the Complaint.

130.     In the June 10, 2016 email from then-Senior Associate Dean for Alumni Relations and Resource Development Haight to Sarah Wald, Wendy Pangburn, and Liz Nunez (the "June 10, 2016 Email"), Defendants, for the first time in over two decades since Mr. Powell graduated

44

from HKS with his MPA degree, disputed Mr. Powell's status as a graduate of HKS.  The June

10, 2016 Email is attached hereto as Exhibit A.

**ANSWER**:  Defendants deny the allegations in Paragraph 130 of the Complaint.

131.     In the June 10, 2016 Email, Defendants asserted that "you [Mr. Powell] have a

significant outstanding debt from the 1994 academic year in the amount of $22k while you were

enrolled in the mid-career MPA program," that "your degree was not conferred due to this

outstanding debt," and that "[t]his is problematic for the School, and as a matter of policy, you

cannot be considered a graduate of Harvard Kennedy School until this is remedied."  These

statements in the June 10, 2016 Email are false.  Mr. Powell's employer paid his tuition in full

after he enrolled in HKS's MPA Program and Mr. Powell successfully completed all

requirements for obtaining an MPA from HKS, graduated from HKS and received his MPA

degree.

**ANSWER**:  Defendants respond that the referenced email communication speaks for

itself, and otherwise denies each and every allegation in Paragraph 131.

132.     It would be inequitable and unjust to allow Defendants to deny Mr. Powell the

privileges that attend being a graduate of HKS and possessing a degree from HKS after

representing to him for over twenty years that he is a graduate of HKS.

**ANSWER**:  Because the allegations in Paragraph 132 of the Complaint assert

conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in

Paragraph 132 of the Complaint are deemed allegations of fact, Defendants deny each and every

allegation thereof.

133.     Injustice can only be avoided by enforcing Defendants' promises to Mr. Powell

that he is a graduate of HKS and member of the HKS alumni community and estopping

Defendants from claiming that Mr. Powell is not a graduate of HKS or member of the HKS alumni community.

**ANSWER**:  Because the allegations in Paragraph 133 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 133 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

134.    Defendants must be estopped from claiming that Mr. Powell is not a graduate of HKS or member of the HKS alumni community.

**ANSWER**:  Because the allegations in Paragraph 134 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 134 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

**COUNT SEVEN**
**EQUITABLE ESTOPPEL**
**(AGAINST ALL DEFENDANTS)**

135.    Mr. Powell repeats and re-alleges the allegations in Paragraphs 1-57 as if set forth fully herein.

**ANSWER**:  Defendants incorporate by reference their responses in paragraphs 1-57 above as if fully set forth herein.

136.    Throughout the past twenty-three years since Mr. Powell graduated from HKS, Defendants have told and promised to Mr. Powell and represented, including publicly, both to Mr. Powell and others, that Mr. Powell was and is a graduate of HKS and that he was and is a member of the HKS alumni community.

**ANSWER**:  Defendants deny the allegations in Paragraph 136 of the Complaint.

137.     Defendants have done so by conferring an MPA degree from HKS on Mr. Powell in June 1994, by expressly telling Mr. Powell that he is a graduate of HKS and member of the HKS alumni community, and by including Mr. Powell in numerous alumni communications, and allowing Mr. Powell to be members of and participate in HKS alumni organizations and events.

**ANSWER**:  Defendants deny the allegations in Paragraph 137 of the Complaint.

138.     Defendants' representations that Mr. Powell was and is a graduate of HKS and that he was and is a member of the HKS alumni community were intended to induce Mr. Powell to rely on the representations and to devote significant time and energy and to expend money on Defendants and their alumni organizations.

**ANSWER**:  Defendants deny the allegations in Paragraph 138 of the Complaint.

139.     A reasonable person would rely upon these representations and promises by Defendants.

**ANSWER**:  Because the allegations in Paragraph 139 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 139 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

140.     Mr. Powell did in fact reasonably rely—to his detriment—on the representations by Defendants.

**ANSWER**:  Defendants deny the allegations in Paragraph 10 of the Complaint.

141.     Over the past two decades, Mr. Powell has devoted significant time and energy, and expended substantial funds to HKS and the HKS alumni community, because he is a graduate of HKS, as repeatedly stated by Defendants.

**ANSWER**:  Defendants deny the allegations in Paragraph 141 of the Complaint.

142.    In the June 10, 2016 email from then-Senior Associate Dean for Alumni Relations and Resource Development Haight to Sarah Wald, Wendy Pangburn, and Liz Nunez (the "June 10, 2016 Email"), Defendants, for the first time in over two decades since Mr. Powell graduated from HKS with his MPA degree, disputed Mr. Powell's status as a graduate of HKS.  The June 10, 2016 Email is attached hereto as Exhibit A.

**ANSWER**:  Defendants deny the allegations in Paragraph 142 of the Complaint.

143.    In the June 10, 2016 Email, Defendants asserted that "you [Mr. Powell] have a significant outstanding debt from the 1994 academic year in the amount of $22k while you were enrolled in the mid-career MPA program," that "your degree was not conferred due to this outstanding debt," and that "[t]his is problematic for the School, and as a matter of policy, you cannot be considered a graduate of Harvard Kennedy School until this is remedied."  These statements in the June 10, 2016 Email are false.  Mr. Powell's employer paid his tuition in full after he enrolled in HKS's MPA Program and Mr. Powell successfully completed all requirements for obtaining an MPA from HKS, graduated from HKS and received his MPA degree.

**ANSWER**:  Defendants respond that the referenced email communication speaks for itself, and otherwise denies each and every allegation in Paragraph 143.

144.    It would be inequitable to allow Defendants to deny Mr. Powell the privileges that attend being a graduate of HKS and possessing a degree from HKS after representing to him for over twenty years that he is a graduate of HKS.

**ANSWER**:  Because the allegations in Paragraph 144 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in

Paragraph 144 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

145.    Defendants must be estopped from claiming that Mr. Powell is not a graduate of HKS.

**ANSWER**:  Because the allegations in Paragraph 145 of the Complaint assert conclusions of law, Defendants are not required to plead thereto; to the extent the allegations in Paragraph 145 of the Complaint are deemed allegations of fact, Defendants deny each and every allegation thereof.

**PRAYER FOR RELIEF**

Defendants deny that Plaintiff is entitled to any type of remedy, relief, or damages, including the relief requested in Plaintiff's Prayer for Relief.

**JURY DEMAND**

146.    Plaintiff demands a trial by jury on all claims and issues so triable.

**ANSWER**:  No response is required.

**AFFIRMATIVE DEFENSES**

To the extent it is Plaintiff's burden to prove any of the issues raised in the affirmative defenses set forth below, Defendants hereby preserve, and do not waive, their legal position that Plaintiff maintains the burden of proof on those issues.  Defendants reserve the right to amend their Answer to assert such additional defenses as may later become available or apparent to them.

**FIRST DEFENSE**

Plaintiff's claims are barred because the alleged libelous and false light statements are substantially true, and/or not materially false.

49

## SECOND DEFENSE

Plaintiff's claims are barred because Defendants did not publish the alleged libelous and false light statements with actual malice, negligence, or with any other applicable level of fault.

## THIRD DEFENSE

Plaintiff did not incur any damages or loss as a result of any act or conduct by Defendants.

## FOURTH DEFENSE

Plaintiff's claims are barred because the alleged libelous and false light statements are shielded by the common interest privilege.

## FIFTH DEFENSE

Plaintiff's claims are barred because the alleged publication of private facts and false light statements were not broadly disseminated to the public.

## SIXTH DEFENSE

Plaintiff's claims are barred because the alleged private facts, in the event they were sufficiently publicized, pertained to issues of legitimate public concern.

## SEVENTH DEFENSE

Plaintiff's claims are barred by the First Amendment.

## EIGHTH DEFENSE

Plaintiff never paid Harvard the $22,418.49 he owed Harvard for the education and other goods and services he received in 1993-94.  Defendants are entitled to equitably recoup that amount, plus interest, since Plaintiff seeks to estop Harvard from denying him a degree.

**NINTH DEFENSE**

Harvard is entitled to a set-off of $22,418.49, plus interest, against any judgment obtained by Plaintiff in this case.

**TENTH DEFENSE**

Powell's claims that Harvard should be forced to state, or to desist from denying, that Powell has a degree from HKS are barred by the doctrine of equitable estoppel.

**COUNTERCLAIM**

Pursuant to Fed. R. Civ. P. 13, Counterclaimant Harvard University ("Harvard") hereby counterclaims and alleges against Counterclaim Defendant Stephen Powell as follows:

**INTRODUCTION**

1.      Powell claims that Harvard conferred an MPA degree on him in 1994, and is now suing Harvard seeking an order that Harvard be estopped from denying that he is a graduate of the Kennedy School.  However, Powell never paid Harvard for any of the costs of obtaining an MPA degree, and indeed deliberately avoided paying Harvard for the costs of that degree. Fundamental principles of equity dictate that Powell cannot claim entitlement to a degree without paying for it.  Harvard is therefore entitled to equitable recoupment of the debt which Powell has, to this day, failed to pay for more than 23 years.

**PARTIES**

2.      Harvard University is a private research university located in Cambridge, Massachusetts.  Harvard operates the John F. Kennedy School of Government ("HKS"), a public policy and public administration school of Harvard University in Cambridge, Massachusetts.

3.      On information and belief, Stephen Powell is an individual who is domiciled in the District of Columbia.

51

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction over the Counterclaim under 28 U.S.C.

§ 1332.

5.      Powell has consented to the personal jurisdiction of this Court by filing his

Complaint.  Venue is proper in this judicial district under 28 U.S.C. § 1391 (b).

## FACTUAL BACKGROUND

6.      Stephen Powell attended HKS in its mid-career MPA program for the academic

year 1993-94.  Powell's application stated that he was the "Founder, owner, President" of New

England Broadcasting, Inc., a company that he started six years before he enrolled.

7.      Although Powell completed his required courses in the year-long curriculum, he

never paid Harvard for any of the education, services, and goods Harvard provided him.  That

included, at least, his tuition bill, cost of health insurance, cost of a parking space, various course

materials, the fee to use the gym, and other sundry expenses.

8.      All told, Powell owed Harvard $22,418.49 at the end of the academic year in June

1994.  Powell is, and always was, personally responsible for the costs of the education, goods

and services he obtained from Harvard.

9.      Powell was well aware of his debt.  He did not attend the graduation ceremony

and did not receive a diploma.

10.      Over the next three years, Harvard made repeated efforts through letters and

phone calls to try to collect the debt Powell owed Harvard.

11.      During some of those phone calls, Powell acknowledged his debt and represented

that he would pay it by making monthly payments of differing amounts on different phone calls.

12.     Harvard reasonably relied on those representations and allowed the debt to remain unpaid for years.   However, Powell never paid anything to Harvard.

13.     After Powell left Harvard, he maintains, he became a wealthy private businessman.  Powell has repeatedly used the education he received from Harvard for which he never paid to further his own career, interests and personal reputation.

14.     About 20 years after he left Harvard, Powell began to be active in the school's DC Alumni Council and was elected its President.

15.     In preparing the program for an Alumni Network weekend, Liz Nunez, who at the time was HKS's Senior Director of Alumni Relations, discovered that the school's records indicated Powell had never completed his degree.

16.     On May 8, 2016, Nunez e-mailed Powell to broach that "awkward" subject and asked him to let her know why that might be, so that any issue with his records might be resolved.

17.     After receiving the June 10, 2016 e-mail referenced in the Complaint, Powell claimed in an e-mail that "I understood that my account balance was settled just after my graduation and haven't heard anything to the contrary until Friday afternoon."  That statement was false.  Harvard made efforts for years to try to collect Powell's debt, and Powell represented to Harvard that he would pay it, but elected not to.

18.     To date, Powell has still never repaid any of the debt he owes Harvard.

**FIRST CLAIM FOR RELIEF**
**EQUITABLE RECOUPMENT**
**(Against Counterclaim Defendant Stephen Powell)**

19.     Counterclaim Plaintiff incorporates by reference paragraphs 1-25 above as if fully set forth herein.

20.    In his Complaint against Harvard and Haight, Powell alleges claims for promissory estoppel, *see* ECF No. 1, Compl. ¶¶ 124-134, and equitable estoppel, *see id.* ¶¶ 136-145.

21.    Powell alleges, falsely, that his "employer" paid his tuition in full after he enrolled at HKS.

22.    Powell demands that Harvard be estopped from denying him a degree for which he never paid.

23.    Harvard notified Powell on numerous occasions that he owed the school $22,418.49, and Powell never received a diploma from Harvard because his debt remains unpaid to this day.

24.    Fundamental principles of equity support the conclusion that Powell is not entitled to a degree from Harvard without paying for it, nor may Harvard be estopped from denying him a degree he has never paid for.

25.    Counterclaim Plaintiffs are entitled to equitably recoup the debt that Powell seeks to avoid in bringing his claims for promissory and equitable estoppel.

26.    Harvard's claim for equitable recoupment arises out of the same transaction as Powell's claims that Harvard be estopped from denying him a degree.

27.    Powell's suit against Harvard is timely.

28.    Powell's decision to sue Harvard equitably vitiates any statute of limitations that might otherwise bar Harvard from seeking to recoup the debt Powell owes Harvard arising out of the same transaction.

29.    Powell owes Harvard $22, 418.49, plus pre-judgment interest accrued since June 1994.

## RELIEF REQUESTED

WHEREFORE, Harvard respectfully requests that this Court grant judgment in favor of Harvard as follows:

a.      Awarding Harvard the $22,418.49 in tuition, fees and costs that Powell owes to the school;

b.      Awarding Harvard prejudgment interest on that amount, accrued since June 1994;

c.      Awarding Harvard such other and further relief as this Court deems just, proper and equitable.

Dated:  December 22, 2017

Respectfully submitted,


_____/s/ Nathan Siegel_____
Nathan Siegel (D.C. Bar No. 446253)
Lisa B. Zycherman (D.C. Bar No. 495277)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, N.W., Suite 800
Washington, D.C.  20006-3401
(202) 973-4200
(202) 973-4499 (fax)
nathansiegel@dwt.com
lisazycherman@dwt.com

*Attorneys for Defendants Harvard University (a/k/a President and Fellows of Harvard College), Harvard University John F. Kennedy School of Government, and Charles Haight*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of December, 2017 I caused the foregoing Answer

and Counterclaim to be served via the court's CM/ECF system upon all parties.


      /s/ Nathan Siegel
        Nathan Siegel